Prepared by: GAIL MORRILL

**COUNTRYWIDE HOME LOANS, INC.**

DATE:        06/25/2007
BORROWER: MARTHA C. PUERTO-SWINSON
CASE #:
LOAN #:        ████3358
PROPERTY ADDRESS: 9111 SW 22ND CT UNIT A
                DAVIE, FL 33324-6855

Branch #: 0000248
2690 WESTON ROAD #200
WESTON, FL 33331
Phone: (954)660-3940
Br Fax No.: (954)349-3603

### HOME EQUITY CREDIT LINE AGREEMENT AND
### DISCLOSURE STATEMENT

Date: 06/25/2007

This Home Equity Credit Line Agreement and Disclosure Statement ("Agreement") governs my Home Equity Credit Line Account ("Account") with you,
COUNTRYWIDE HOME LOANS, INC.
The words "I," "me" and "my" refer to the Borrower signing this Agreement. If more than one Borrower signs this Agreement, the words "I," "me" and "my" refer to all who sign, separately and together. The words "you" and "your" refer to
COUNTRYWIDE HOME LOANS, INC.

**1. LOANS; DRAW AND REPAYMENT PERIOD.** Subject to the limitations explained in this Agreement, upon my request for loans, you agree to lend money to me from time to time until the last day of the sixtieth (60th) consecutive calendar month following the date set forth above ("Initial Draw Period,") or until the last day of any renewed Draw Period, up to my Credit Limit indicated in paragraph 5 below. (You will not make any loans if my Account is sooner terminated or suspended under paragraphs 12.B, 12.D, 13.B or 16.A below.) You will not make any loan before the fourth business day following the signing of this Agreement, except to the extent of proceeds of this loan that are for the purchase or initial construction of the Property.

I agree that prior to the end of the Initial Draw Period, you have the right to review my Account to decide whether such Initial Draw Period will be renewed. Unless you have sent me written notice not later than the sixtieth (60th) day before the Initial Draw Period ends that you have decided not to renew such Initial Draw Period, such Initial Draw Period will automatically renew for one additional sixty (60) month period, and the Draw Period on my Account shall thereafter be considered to be 120 months for purposes of this Agreement. If the Initial Draw Period is not renewed, then the Draw Period on my Account shall thereafter be considered to be 60 months for purposes of this Agreement.

After the Draw Period ends, I will no longer be able to obtain loans and then must pay the outstanding balance over the specified Repayment Period unless my Account is sooner terminated under paragraph 13.B below, in which case my Account is due and payable in full at the time of such termination. The Repayment Period shall be 180 months.

**2. MAKING LOANS.** You will make loans under this Agreement (up to my Available Credit Limit) by (i) honoring Equity Credit Line Checks you provide to me requesting advances of at least $250; (ii) if you issue an access card ("Card"); by honoring advances I request by using the Card at any Merchant or servicer provider ("Merchant") or any participating automated teller ("ATM") networks; (iii) paying closing costs and finance charges in accordance with paragraph 8.C below; (iv) paying certain other amounts on my behalf in accordance with my disbursement authorization provided to you at or before the time I sign this Agreement; (v) paying any unpaid taxes, assessments, property insurance or other sums as provided under this Agreement or the Mortgage; or (vi) any other method or procedure you establish.

**3. SPECIAL CARD TERMS AND CONDITIONS.** I understand that you, in your sole discretion and at your sole option, may cause to be issued a Card, as an access device and an additional means by which I may obtain advances under the Account. By applying for the Account, I have requested that you issue the Card to me if my application is approved and if you, at your option and in your sole discretion, provide access to my/our Account by the Card after the Account is opened. If one or more Cards are issued to me as a means of obtaining loan advances on my Account, I agree that my use of the Card and any related loan advances will be governed by the following terms and conditions **unless I cancel my card within [30] days of receiving the Card and have not authorized the use of the Card or Card account number.** I also agree to comply with any agreement between me and the Card Issuer:

A. Account Access. In addition to any means by which I may access my Account as described in the Agreement, I may be permitted to obtain (up to my Available Credit Limit) loan advances by using any Card you provide, at any merchant or service provider ("Merchant") that allows me to use the Card to pay for goods or services. If you provide

• HELOC Agreement & Disclosure Statement-FL
2C507-FL (11/06)(d/l)

Page 1 of 11

Exhibit A

LOAN #: ●●●●3358

me with a Personal Identification Number ("PIN"), I may also obtain loan advances by using the Card at participating automated teller machine ("ATM") networks. I agree not to write my PIN on my Card(s) or disclose it to others. If I use my Card at an ATM, I understand that the owner of the ATM may charge me a fee for the transaction. I understand that in order to use my Card at an ATM, I must call 1-800-689-5864 to request a PIN. I also understand that Card loan advances (whether at a Merchant or ATM) may be subject to transactional limits that could restrict the full use of my Available Credit Limit. There are no minimum draw requirements that apply when I use the Card, except for any limits that may be imposed separately by a Merchant or ATM owner. I agree that if you decide in your sole discretion to approve any transactions above my Available Credit Limit, I will be responsible for the full amount of any such advances. I understand that if I make reservations or purchases of any kind using my Card, my Account may be immediately charged for the full amount of the reservation or purchase, regardless of whether I have received the goods or services requested at the time my Account is charged.

B. Liability. I agree that all borrowers who have executed the Agreement are jointly and severally liable under the terms of the Agreement for any Card transactions that are posted to the Account, whether or not a Card has been issued to all borrowers.

C. Authorizations. All Card transactions are processed through the applicable bankcard networks that are branded on the Card ("Bankcard Networks") according to the requirements and procedures of the Bankcard Networks. Some Card transactions may require prior authorization by you or pursuant to the requirements and procedures of the Bankcard Networks before they are approved for processing. The Bankcard Networks may refuse to process any Card transaction if it appears to be illegal or fraudulent, or if the Merchant or the transaction does not otherwise meet the requirements of the Bankcard Networks. In addition, you or the Card Issuer may deny authorization for any Card transaction if my Account has been suspended or terminated. I also agree that if you or the Card Issuer detects any suspicious or unusual use, you or the Card Issuer may suspend use of any Card.

D. Lawful Transactions. I agree to use my Card only for valid and lawful purposes. If I use my Card for any other purpose or transaction (herein called a "Prohibited Activity"), including, without limitation, gambling activities, I agree to promptly reimburse you, the Card Issuer (if other than you) and the Bankcard Networks for all amounts or expenses paid by any such party as a result of such use. You reserve the right to block any Prohibited Activity and/or to not approve any authorization request for a Prohibited Activity. Card transactions for any Prohibited Activity made by me or for my benefit shall be considered authorized by me. You will not be liable if I engage in any Prohibited Activity using the Card, and I will be responsible for the full amount of any loan advances made in connection with such Prohibited Activity. Display by an online merchant of the service mark of any Bankcard Network branded on the Card does not mean that a Card transaction over the Internet is legal where I reside.

E. Transactions With Merchants. I understand and agree that: (1) If a Merchant discloses a policy such as "no returns", "no refund", "no return or credit without receipt", "as is", "store credit only", "all sales final", or similar language, I will be bound by that policy when I use my Card to pay for goods or services from that Merchant; (2) When using my Card to make travel or lodging reservations, I must obtain the Merchant's cancellation policy and follow it if I cancel the reservations. If I cancel, I must obtain the cancellation number that the Merchant is required to give me pursuant to the requirements and procedures of the Bankcard Networks. The Merchant may charge me for a cancelled transaction unless I can provide you with a correct cancellation number. (3) If I authorize a Merchant to charge repeat transactions to my Account without my presenting my Card for each charge, then I must notify the Merchant when I want to discontinue the repeat transactions or if my Account is suspended or closed. Otherwise, I will be responsible to you for the amount of all such repeat transactions. I understand that if my loan advance privileges or my use of the Card is suspended or cancelled for any reason, it is my responsibility to pay for such repeat transactions directly until loan advance privileges and/or Card use are reinstated. (4) If I disagree with any transaction on my monthly statement or have a dispute with any Merchant as a result of a Card transaction, I agree to comply with the section entitled MY BILLING RIGHTS -- I SHOULD KEEP THIS NOTICE FOR FUTURE USE in my Agreement. I will promptly provide you with such information or assistance as you reasonably request.

F. Foreign Transactions. I agree to pay you in U.S. dollars. If I make a Card transaction in a foreign currency, the appropriate Bankcard Network will convert the transaction amount into U.S. dollars at the rates, and in accordance with its operating regulations in effect at the time the transaction is processed. Currently, the regulations of the Bankcard Networks provide that the currency conversion rate to be used is either a wholesale market rate selected by the Bankcard Networks or a government-mandated rate, each in effect one day prior to the processing date, plus an adjustment factor (currently 1%) established by the Bankcard Networks. The Bankcard Networks may change the currency conversion rate, and the formula used to establish that rate, from time to time. The currency conversion rate in effect on the processing date may differ from the rate in effect on the transaction date or the posting date. The currency conversion rate used may be the same as, greater than or less than the amount that would be calculated by conversion through a financial institution in the country in which the transaction occurred. I understand that you do not determine the currency conversion rate or the formula to establish the rate that is used by the Bankcard Networks and that you do not receive any portion of the currency conversion rate used by the Bankcard Networks.

Exhibit A

LOAN #: ●●●●3358

G. <u>Limitation of Liability</u>. Your liability to me, if any, for wrongful dishonor of any loan request I make using my Card is limited to my actual damages. I also agree that you are not responsible if any transaction is not approved, whether by you, a Merchant, Bankcard Network, or a third party, even if I have sufficient credit available.

H. <u>Termination/Suspension of Account</u>. Upon any termination or cancellation of my Account by you or by me, or any suspension of my loan advance privileges under the Agreement, I agree that all Cards will be destroyed by me upon your instruction, or may be retrieved by you or your agent.

I. <u>Cancellation/Expiration of Cards</u>. I may be permitted to use the Card to access my account only so long as the access card program remains active and you permit me to participate in the program. If more than one person has executed the Agreement, any one of us may request that our Cards be cancelled. The request, at your option, may be made verbally or in writing. You may also cancel any Card at your sole discretion at any time, including if (1) the contracts with current or future providers of services used to operate the Card program expire or are terminated; or (2) I have not used my Card to obtain a loan advance on my Account at least once during any 12 month period; (3) my card is lost, stolen, or otherwise subject to unauthorized use; or (4) any part of the Program, including use of the Card, is prohibited by applicable law. I understand and agree that the terms governing my ability to obtain loan advances during the Initial Draw Period and any renewed Draw Period are set forth in the Agreement and that those terms supercede any inconsistent expiration date(s) printed on any Cards that are issued to me to the extent that such expiration date(s) is (are) later than the expiration date of any Draw period defined in the Agreement.

J. <u>Lost or Stolen Cards</u>. **I agree to promptly notify you at 1-800-556-5678 if any Card is lost or stolen, or if I suspect unauthorized use.** You reserve the right not to honor any loan advance request made using a Card if any of my Cards has been cancelled or reported lost or stolen.

K. <u>Unauthorized Transactions</u>. I will not be liable for the unauthorized use of my Card. I agree to assist you in your investigation of any claims of unauthorized Card transactions and understand that I may be required to provide you with a written statement and/or an Affidavit of Forgery. I agree that if I permit a person to use the Card or Card account number, or if I benefit from another person's use of the Card or Card account number, such use is not unauthorized use of the Card, even if I did not intend to be responsible for such use.

L. <u>Special Rule for Card Purchases</u>. The following is in addition to the notice at the end of the Agreement entitled MY BILLING RIGHTS – I SHOULD KEEP THIS NOTICE FOR FUTURE USE:
**Special Rule for Card Purchases.**
If I have a problem with the quality of property or services that I purchased with my Card, and I have tried in good faith to correct the problem with the merchant, I may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

(a)  I must have made the purchase in my home state or, if not within my home state, within 100 miles of my current mailing address; and

(b)  The purchase price must have been more than $50. These limitations do not apply if you or the Card issuer own or operate the merchant, or if you or the Card issuer mailed me the advertisement for the property or services.

## 4. PROMISE TO PAY; MINIMUM PAYMENT; METHOD OF PAYMENT.

A. I promise to pay to your order, when and as due, all loans made under this Agreement, plus all unpaid finance charges, insurance premiums, collection costs and other charges I owe to you now or in the future. I agree to make my payments in the manner specified in my periodic statement, and if I do so such payments will be credited as of the day of receipt.

B. At a minimum, you will send me a periodic statement at the end of each billing cycle in which there is a debit or credit balance of more than one dollar ($1.00) or in which a finance charge has been imposed. The periodic statement will show all Account activity during the billing cycle and contain other important information, including my "New Balance," my Annual Percentage Rate, the amount of my "Minimum Payment Due," my "Payment Due Date" and the place and manner of making payments.

C. I may pay all or any part of my "New Balance" at any time, subject to an Account Termination Fee or Low Balance Fee **FINANCE CHARGE**, as applicable, as described in paragraphs 8.D and 7.B(6), respectively. If I pay my entire "New Balance" shown on my periodic statement for any billing cycle by the "Payment Due Date," any periodic finance charge incurred from the first day of the next billing cycle until the posting of my payment will appear on my periodic statement for the next billing cycle.

D. Unless you terminate my Account and require immediate payment of the entire outstanding balance as provided in paragraph 13.B below, I must pay you at least the "Minimum Payment Due" for each billing cycle by the "Payment Due Date" shown on my periodic statement.

Exhibit A

LOAN #: ⬛⬛⬛3358

E. During the Draw Period, my "Minimum Payment Due" equals all unpaid finance charges, credit life insurance premiums and other charges imposed during the billing cycle together with any "Amount Past Due." My "Minimum Payment Due" during the Draw Period will not reduce the principal balance that is outstanding on my Account.

F. During the Repayment Period, if the Draw Period on my Account is 60 months or 120 months, my "Minimum Payment Due" equals 1/180th of the outstanding principal balance of my Account as of the last day of the Draw Period plus all unpaid finance charges, credit life insurance premiums and other charges imposed during the billing cycle together with any "Amount Past Due."

**5. CREDIT LIMIT.** My Credit Limit under this Agreement is $ 63,500.00        . I promise not to request a loan which will cause the unpaid principal balance of my Account to exceed my Credit Limit. You can increase the Credit Limit at any time without prior notice to me. You can refuse to make loans that cause my obligations under this Agreement to exceed my Credit Limit. You will make loans on my Account based on the "Available Credit Limit" shown on my most recent periodic statement. However, I agree that when I make payments on my Account by check or other non-cash method, you reserve the right to make loans based on the "Available Credit Limit" shown on the last periodic statement issued prior to the most recent periodic statement. In addition to each "Minimum Payment Due," I must pay immediately, without notice or demand from you, any part of the principal balance of my Account that exceeds my Credit Limit.

**6. ANNUAL PERCENTAGE RATE.**

☐ A. The initial Daily Periodic Rate is      N/A %. The initial **ANNUAL PERCENTAGE RATE** is      N/A %. These rates are "discounted" rates. This means that these rates are lower than the rates that would be in effect if the formula set forth in paragraph 6.C below had been used, in which event the initial Daily Periodic Rate would be      N/A % and the initial **ANNUAL PERCENTAGE RATE** would be      N/A %. These discounted rates will be in effect from the date of this Agreement until N/A        . Thereafter, the Daily Periodic Rate and the Annual Percentage Rate will be determined using the formula set forth in paragraph 6.C below.

☒ B. The initial Daily Periodic Rate is  0.02466 % and the initial **ANNUAL PERCENTAGE RATE** is 9.000 %. These rates are not discounted.

C. My Annual Percentage Rate and Daily Periodic Rate may increase or decrease (the first day after my "discounted" rate has expired, if applicable) according to the following procedure: The **ANNUAL PERCENTAGE RATE** shall be the "Index" plus a "Margin." The "Index" will be the highest Prime Rate as published in the "Money Rates" table of The Wall Street Journal as of the first business day of the calendar month. The "Margin" is equal to the number of percentage points disclosed in paragraph 6.D below. Each billing cycle will end on the last day of the calendar month. Any new Index value shall be effective as of the first day of the billing cycle in which such new Index value is established.

Upon a change in the Index, any resulting change in my Daily Periodic Rate and Annual Percentage Rate will take effect without prior notice to me, and will apply to new loans and to the outstanding principal balance in my Account. The new Annual Percentage Rate and Daily Periodic Rate will apply to my then existing unpaid principal balance and all new loans I obtain until my Annual Percentage Rate and Daily Periodic Rate change again. The Daily Periodic Rate at any time equals the **ANNUAL PERCENTAGE RATE** divided by 365.

D. The "Margin" to be used under paragraph 6.C above to determine my **ANNUAL PERCENTAGE RATE** is   0.750  percentage points.

E. The Annual Percentage Rate is a simple interest rate. The Annual Percentage Rate includes only interest and not other costs. The **ANNUAL PERCENTAGE RATE** will never increase above   18.000 % or the maximum rate permitted by law, whichever is less.



Exhibit A

LOAN #: ████3358

F. If the Daily Periodic Rate (and the corresponding Annual Percentage Rate) increases, I will have to pay additional periodic finance charges and, as a result, I will have to pay larger "Minimum Payments."

Notwithstanding any other provision of this Agreement, in no event shall the interest rate or other charges in the nature of interest exceed the maximum rate of interest allowed by applicable law, as amended from time to time. You do not intend to charge any amount of interest or other fees or charges in the nature of interest that exceed the maximum rate allowed by applicable law. Any payment in excess of that permitted by law will be credited by you as a payment of principal unless I notify you to refund the amount directly to me.

**7. FINANCE CHARGE.** I agree to pay a finance charge on my Account as explained below.

A. Periodic **FINANCE CHARGE.**

(1) A loan represented by an Equity Credit Line Check will be posted to my Account on the date that such a check is presented to you for payment. Any loan advance represented by a Card transaction will be posted to my Account as of the date that you receive the transaction for processing. The periodic finance charge begins to accrue on my Account from the time a loan is posted to my Account. There is no grace period during which I can repay loan advances without incurring a periodic finance charge.

(2) You compute the periodic finance charge on my Account by applying the Daily Periodic Rate to the "Average Daily Balance" in my Account (including current transactions). To determine the periodic finance charge for any billing cycle, the "Average Daily Balance" is multiplied by the Daily Periodic Rate, then this product is multiplied by the number of days in the billing cycle.

(3) To get the "Average Daily Balance," you take the beginning principal balance of my Account each day, add any new loans and subtract any principal payments or credits. This gives you the Daily Balance. Then you add up all the Daily Balances for the billing cycle and divide by the total number of days in the billing cycle. This gives you the "Average Daily Balance."

B. Other **FINANCE CHARGES.**

(1) Loan Origination **FINANCE CHARGE.**

I agree to pay a Points **FINANCE CHARGE** of $ 0.00       at the time I sign this Agreement.

| | $ |
| --- | --- |
| | $ |
| | $ |
| | $ |
| | $ |

(2) Broker Fee **FINANCE CHARGES.**

I agree to pay Broker Fee **FINANCE CHARGES** of $N/A       at the time I sign this Agreement.

| | $ |
| --- | --- |
| | $ |
| | $ |
| | $ |
| | $ |

(3) Settlement Agent **FINANCE CHARGES.**

I agree to pay the following Settlement Agent **FINANCE CHARGES** at the time I sign this Agreement.

| Attorney's Fee | $ | 0.00 |
| --- | --- | --- |
| Closing/Escrow | $ | 25.00 |
| Fed-Ex/Faxes/Photocopies | $ | 50.00 |
| Insurance Certification | $ | 15.00 |
| | $ | |
| | $ | |



Exhibit A

LOAN #: ████3358

(4) Miscellaneous **FINANCE CHARGES.**

I agree to pay the following miscellaneous **FINANCE CHARGES** at the time I sign this Agreement:

| | |
|---|---|
| Flood Certification | $ 26.00 |
| | $ |
| | $ |
| | $ |

(5) Annual Maintenance Fee **FINANCE CHARGE.**

[X] I agree to pay an annual maintenance fee **FINANCE CHARGE** of $ 75.00 which you will charge to my Account on the first anniversary of this Agreement and every anniversary date thereafter, whether or not I have used or continue to use my Account; except that such fee shall be waived for the entire term of this Agreement if I meet both of the following conditions: (a) I maintain an average outstanding daily balance which does not fall below $20,000.00 from the date of this Agreement through the first anniversary of this Agreement; and (b) I make each monthly payment during that period on or before the due date for each such payment. You will not rebate any portion of the annual fee if my Account is terminated or suspended before the end of any annual period.

[ ] I will not be charged an annual maintenance fee **FINANCE CHARGE** on this loan.

(6) Low Balance Fee **FINANCE CHARGE.**

[ ] In consideration of having an Account with a reduced Margin, I agree to maintain an Average Daily Balance of $40,000 in each monthly billing cycle during the first two years of my Account. I further agree to pay a Low Balance Fee **FINANCE CHARGE** of $40 for each monthly billing cycle during the first two years of my Account in which I fail to maintain an Average Daily Balance of $40,000. You will not charge me this fee for the month in which you charge me an Account Termination Fee pursuant to the terms of paragraph 8.D.

**8. OTHER CHARGES.**

A. I agree to pay each of the charges listed below, which shall constitute additional indebtedness under this Agreement. Any charges assessed will be shown on my periodic statement for the billing cycle in which such charge is assessed:

(1) If I fail to make my "Minimum Payment Due" within ten (10) days of the "Payment Due Date," I agree to pay a late fee of 5% of the late payment or $5.00, whichever is greater.

(2) For each Equity Credit Line Check written for less than $250 which you honor, I agree to pay a Processing Fee of $5.

(3) I agree to pay a Return Item Fee of $15 for each check you receive in payment of my Account which is returned unpaid upon second presentment.

B. I agree to pay you or my broker the following closing costs at or before the time I sign this Agreement:

| | |
|---|---|
| Full Appraisal | $ 255.00 |
| Credit Report Fee | $ 35.00 |
| Title Examination Fee | $ 25.00 |
| Title Ins/ALTA Policy | $ 209.55 |
| Recording | $ 78.00 |
| City Tax Stamp | $ 222.25 |
| State Tax Stamp | $ 127.00 |
| Title Insurance Endorsement | $ 95.96 |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| LESS Amounts Paid by Lender | $ 0.00 |
| Total Paid by Borrower | $ 1,163.76 |



Exhibit A

LOAN #: ██████3358

C. I may elect to pay the closing costs described in paragraph 8.B above and the finance charges described in paragraph 7.B above in cash or by check at or before the time I sign this Agreement or I may elect to finance some or all of such costs and finance charges by allowing you to make a loan under my Account to pay some or all of such costs and finance charges.

D. [X] I agree to pay an Account Termination Fee of $ 350.00     to cover your costs of processing and administering my Account if I pay in full and terminate my Account with you and ask you to satisfy my mortgage lien on or before the fifth (5th)    anniversary of this Agreement.

[ ] I will not be charged an Account Termination Fee on this loan.

E. I agree to pay a Demand Statement Expedited Delivery Fee of $ 30.00     for the expedited delivery by facsimile transmission of a statement of the amount necessary to pay in full the debt evidenced by this Agreement (a "Demand Statement"). I agree to pay this fee upon payment in full of the Account. You will not charge me this fee if I request that you deliver a Demand Statement by United States mail.

F. I agree to pay a Reconveyance Preparation Fee of $ 30.00     for satisfying the mortgage securing the debt evidenced by this Agreement.

G. I agree to pay a Recording Fee to reimburse you for the actual cost imposed by the appropriate governmental office to record a satisfaction of the mortgage securing the debt evidenced by this Agreement, which is not to exceed $100.00.

**9. REAL PROPERTY SECURITY.** To secure the payment of all loans I obtain and the performance of all promises I make in this Agreement, I and all co-owners are giving you a Mortgage (the "Mortgage") covering my dwelling located at
9111 SW 22ND CT UNIT A, DAVIE, FL 33324-6855
(the "Real Property"). The Mortgage is security for my current and future obligations under this Agreement. I will continue to be obligated to make payment to you under this Agreement even if the Real Property is damaged or destroyed and whether or not any insurance proceeds are available.

**10. SECTION INTENTIONALLY OMITTED.**

**11. PROPERTY INSURANCE.** I agree to obtain and maintain property insurance against loss or damage to the Real Property, in such amounts, against such risks (including, but not limited to, flood damage insurance required by law), and according to such terms as you may require in the Mortgage or otherwise. I may obtain property insurance from any company of my choice that is acceptable to you. If the amount of the premiums for property insurance increases at any time during the term of my Account, I agree to pay any such increase(s).

**12. YOUR RIGHTS TO TEMPORARILY SUSPEND MY LOANS OR REDUCE MY CREDIT LIMIT.**

A. You may take the actions listed in paragraph 12.B below during the period that any of the following events or conditions occur:

(1) the value of the Real Property declines significantly below its appraised value for the purposes of my Account;

(2) you reasonably believe that I will not be able to meet the repayment requirements under my Account due to a material change in my financial circumstances, such as the filing of a bankruptcy petition by or against me;

(3) I am in default of any material obligation of this Agreement, such as my important obligations listed in paragraph 14 below;

(4) government action (such as enactment of a state usury law) prevents you from imposing the Annual Percentage Rate provided for in this Agreement;

(5) government action (such as imposition of a tax lien) impairs the priority of the lien of the Mortgage such that the value of the lien of the Mortgage is less than 120% of my Credit Limit;

(6) the maximum Annual Percentage Rate set forth in paragraph 6.E above is reached.

(7) The creditor is notified by its regulatory agency that continued advances constitute an unsafe and unsound practice.

Exhibit A

LOAN #: ████3358

B. During the period in which a condition described in paragraph 12.A above occurs, you may refuse to make any additional loans or reduce my Credit Limit or do both. You will mail or deliver written notice to me after you suspend my Account or reduce my Credit Limit and this notice will describe the specific reasons for your action. You are obligated to reinstate my credit privileges when the condition(s) which caused the suspension or reduction have been cured or have changed, provided I have notified you in writing, explaining in detail and documenting how the condition(s) have been cured or have changed and no new condition(s) under paragraph 12.A above or 13.A below have occurred.

C. Before reinstating my right to obtain loans, or restoring my Credit Limit, you may conduct such searches, verifications and evaluations (such as credit reports, appraisals and lien searches) as you deem appropriate, and you may require me to reimburse you on demand for any costs you actually incur for obtaining credit reports and appraisals. You may take these steps to verify that (i) the condition(s) that caused your suspension of my loans or reduction of my Credit Limit no longer exist, and (ii) the priority of the lien of the Mortgage is not impaired.

D. If more than one Borrower signs this Agreement and any such Borrower requests that you cease making loans, you may comply with such a request. All Borrowers who have signed this Agreement must join in any request to reinstate the loans for such request to be effective. If all such persons subsequently request reinstatement of the loans, you must honor such a request unless a condition listed in paragraph 12.A above or 13.A below has occurred.

E. If an event or condition described in paragraph 12.A above occurs which is also an event or condition described in paragraph 13.A below, your rights and remedies described under paragraph 13.B below apply and supercede your rights described in this paragraph 12.

**13. YOUR RIGHTS TO TERMINATE AND ACCELERATE MY ACCOUNT AND TAKE OTHER ACTION.**

A. You may take the actions listed in paragraph 13.B below if any of the following events or conditions occur:

(1) I fail to meet the repayment terms of this Agreement, such as my failure to make any Minimum Payment Due to you on or before the Payment Due Date;

(2) I engage at any time in fraud or material misrepresentation in connection with my Account, whether in any application, in this Agreement or in the Mortgage;

(3) I sell or transfer title to the Real Property without first obtaining your written permission;

(4) I fail to maintain insurance on the Real Property as required under this Agreement or the Mortgage;

(5) I act or fail to act and as a result a lien senior to the lien of the Mortgage is filed against the Real Property;

(6) I die and I am not survived by another person obligated as a Borrower under this Agreement;

(7) All or part of the Real Property is taken through eminent domain, condemnation or similar government taking;

(8) A prior lienholder on the Real Property begins foreclosure under its security document;

(9) The Real Property is used for an illegal purpose which could subject the Real Property to seizure;

(10) I fail to pay taxes on the Real Property; or

(11) My action or inaction adversely affects the Real Property or your rights in the Real Property. Such action or inaction could include, for example, the following:

(a) A judgment is filed against me;

(b) I commit waste or otherwise destructively use or fail to maintain the Real Property;

(c) I die and I am survived by another person obligated as a Borrower under this Agreement; or

(d) I move out of the Real Property.

B. If an event described in paragraph 13.A above occurs, subject to any notice or other limitation of applicable law, you may do any combination of the following things:

(1) you may terminate any of my rights under my Account;

(2) you may temporarily or permanently refuse to make any additional loans;

Exhibit A

LOAN #: 3358

(3)  you may declare all sums owing under this Agreement and any other agreement I have made with you to be immediately due and payable;

(4)  you may foreclose the Mortgage;

(5)  you may reduce my Credit Limit; and

(6)  you may take any other action permitted by this Agreement, by law or in equity.

**14. MY IMPORTANT OBLIGATIONS. I agree that:**

A. I will pay all of my existing and future debts to you under any existing or future agreement with you and I will pay all of my existing and future debts to my other creditors as they become due and will not allow a creditor to obtain a judgment against me.

B. I will not permit any person or entity to levy upon, attach, garnish or otherwise take any money, account or other property in your possession that belongs to me.

C. From time to time, if requested, I will supply you with current financial information about me.

D. I have not made and will not make any misrepresentation in connection with my Account whether in my application, in this Agreement, or in the Mortgage.

E. I will not permit a receiver, sequestrator, liquidator, trustee, guardian, conservator or other judicial representative to be appointed for me or any of my property or for the Real Property.

F. I will not use or allow use of the Real Property for any illegal purpose.

G. I will not move out of the Real Property.

H. I will not permit a lien to be filed which takes priority over the Mortgage for future advances made under this Agreement.

I. I will not break any promise made in this Agreement or in the Mortgage such as:

(1)  my promise not to exceed my Credit Limit; and

(2)  my "Important Obligations" listed in the Mortgage.

J. Before you renew a Draw Period or increase my Credit Limit on my Account, I may need to execute additional documents in order to secure the payment of any loans advanced during any renewed Draw Period or under the increased Credit Limit.

**15. COSTS OF COLLECTION.** Subject to any limits of applicable law, I must pay for your reasonable and actual costs and expenses of collection, or foreclosure including attorney's fees equal to ten percent (10%) of the principal sum or such larger amount as may be reasonable and just, and also all costs, expenses and attorney's fees incurred in any appellate and bankruptcy proceedings. Periodic finance charges will continue to accrue at the rates provided in this Agreement before and after I default and before and after you obtain a judgment against me.

**16. MY RIGHTS TO TERMINATE MY RIGHTS TO OBTAIN LOANS.**

A. Termination by Me. I may terminate my right to obtain loans by sending you a written notice which will become effective upon receipt by you. If more than one person signs this Agreement as Borrower, my right to obtain loans may be terminated by written notice pursuant to this paragraph 16.A signed by any one or more of such persons. I may also suspend my right to obtain loans pursuant to paragraph 12.D above.

B. Termination by You. My right to future advances under my Account will terminate at the end of the Draw Period or any renewed Draw Period if not sooner upon your exercise of your termination or suspension rights under paragraphs 12.B or 13.B above or my exercise of my suspension or termination rights under paragraphs 12.D or 16.A above.

C. Effect of Termination. Upon termination or suspension of my Account, whether by you or by me, I must continue to pay the "Minimum Payment Due" on or before my "Payment Due Dates" until all amounts owed to you under this Agreement are paid in full. However, I may be required to repay all my obligations to you immediately if you exercise your rights under paragraph 13.B above. I must return unused Equity Credit Line Checks to you upon termination. I may be required to pay an Account Termination Fee pursuant to paragraph 8.D above.

Exhibit A

**17. CHANGES TO AGREEMENT.**

LOAN #: ███3358

A. You may change this Agreement to the extent not prohibited by federal or state law, such as the changes listed as follows:

(1) if the original Index is no longer available, you may change the Index and Margin;

(2) you may make any change I agree to in writing;

(3) you may make a change which is unequivocally beneficial to me, such as offering me more minimum payment options, extensions or renewals of my Account, reductions in the rate or fees, and additional means to access loans; and

(4) you may make insignificant changes, such as changing the address to which payments must be sent, name changes, operational changes involving the billing cycle date, the date the Minimum Payment is due, the day of the month on which index values are measured to determine my rate, your rounding rules and the balance computation method.

B. If required by applicable law, you will mail me notice of such a change before the effective date of the change. The change will be effective as to any existing unpaid balance and as to any future transactions under this Agreement.

**18. OTHER PROVISIONS.**

A. Third Parties. This Agreement obligates me and my estate, heirs and personal representatives. This Agreement benefits you and your successors and assigns. You may add or release parties, or permit the addition or substitution of real property collateral that secures this Agreement, or modify, extend or amend this Agreement without in any way affecting my or any non-borrower co-owner's obligations under this Agreement. My rights under this Agreement belong only to me. I cannot transfer or assign them to anyone else. You may transfer and assign your rights and obligations under this Agreement and the Mortgage at any time without my consent.

B. Additional Credit Reports and Appraisals. I authorize you to conduct such searches, verifications and evaluations (such as credit reports, appraisals and lien searches) concerning me, the Real Property and the Mortgage as you may deem necessary from time to time. I will cooperate in having the Real Property reappraised.

C. Tax Deductibility. I know that I should consult a tax adviser regarding the deductibility of interest and charges.

D. Applicable Law. I agree that this Agreement is to be governed by federal law and, to the extent not preempted by federal law, by the laws of the state where the Real Property is located.

E. Application of Payments. You may apply payments and proceeds of the Real Property in such order as you shall deem advisable or as otherwise required by applicable law.

F. Failure to Perform. If I violate or fail to perform any term or condition of this Agreement (or the Mortgage), you may (but are under no obligation to) perform on my behalf. All costs you incur will be added to the unpaid principal of my Account and finance charges will be figured at the rates described above. I agree to pay these costs and finance charges on demand. Your performance of any of my obligations will not be a waiver of any of your rights or remedies under this Agreement.

G. Waiver of Jury Trial. **I waive my right to a jury trial.**

H. Complete Understanding of the Parties. There are no oral agreements concerning this Agreement. This Agreement will not be amended or modified orally. If any provision of this Agreement is held to be void or unenforceable, the rest of this Agreement shall remain in effect.

I. Waiver of Notice. I waive presentment, demand, protest, notice of default, nonpayment, partial payments and all other notices and formalities in connection with the delivery, acceptance, performance, default or enforcement of this Agreement, except those notices that are required by federal Regulation Z.

J. Meaning of Words. All words in this Agreement will be read to be of such gender and number as the context may require. The section headings in this Agreement are for convenience and do not limit or amend any of the Agreement's provisions. Any list of conditions or events in this Agreement preceded by the phrase "such as" is not intended as a full or comprehensive list, but merely as a set of examples of such conditions or events. Other conditions or events are intended to be included to the fullest extent permitted under federal and state law, even if different from the listed conditions or events.



**Exhibit A**

LOAN #: ●●●3358

K. **Payment Marked "Payment in Full."** I agree not to submit any checks to you in payment of my Account marked "Payment in Full" or similar wording unless the amount of the check is equal to the total amount then owing on my Account. If I do submit a check to you marked "Payment in Full" or similar wording for a sum less than the total amount then owing on my Account, you may accept it in partial payment of my Account but will not be bound by the "Payment in Full" or similar notation. **Communications concerning a dispute as to amounts owing on my Account, including any checks submitted to you as full satisfaction of my Account, must be sent to** COUNTRYWIDE HOME LOANS, INC.
P.O. Box 5170, Simi Valley, CA 93062-5170

L. **Enforcement.** You can accept any late or partial payment or otherwise waive or delay enforcing your rights under this Agreement and still exercise your rights at a later time.

M. **Notices.** Except for any notice required under applicable law to be given in another manner, (a) any notice to me provided for in this Agreement shall be given by delivering it or by mailing such notice to me by regular first class mail, addressed to me at my last address appearing on your records or at such other address as I may designate by written notice to you as provided in this paragraph 18.M and (b) any notice to you provided for in this Agreement shall be given by mailing such notice to you by certified mail, return receipt requested, at
COUNTRYWIDE HOME LOANS, INC.
P.O. Box 5170, Simi Valley, CA 93062-5170
or to such other address as you may designate by written notice to me as provided in this paragraph 18.M.

N. **Riders/Addenda.** The covenants and agreements of each of the riders/addenda checked below are incorporated into and supplement and amend the terms of this Agreement.

| | | |
|---|---|---|
| ☐ No Cost Addendum | | ☐ _____ Rider |
| | ☐ _____ Addendum | ☐ |
| ☒ Billing Rights Statement | | |

THE STATE DOCUMENTARY TAX DUE ON THIS NOTE HAS BEEN PAID ON THE MORTGAGE SECURING THIS INDEBTEDNESS.

BY SIGNING BELOW, (1) I AGREE THAT I HAVE READ ALL PAGES OF THIS AGREEMENT INCLUDING ANY RIDERS/ADDENDA, (2) I AGREE AND INTEND TO BE LEGALLY BOUND BY ALL OF ITS TERMS AND CONDITIONS, INCLUDING ANY TERMS AND CONDITIONS LISTED IN ANY RIDERS/ADDENDA, AND (3) I ALSO ACKNOWLEDGE RECEIVING A COMPLETED COPY OF THIS AGREEMENT AND ANY RIDERS/ADDENDA. I ALSO ACKNOWLEDGE THAT I RECEIVED A COPY OF YOUR HOME EQUITY EARLY DISCLOSURE ENTITLED, "IMPORTANT TERMS OF OUR HOME EQUITY LINE OF CREDIT", THE HOME EQUITY BROCHURE ENTITLED, "WHEN YOUR HOME IS ON THE LINE" AND TWO COPIES OF THE HOME EQUITY LINE OF CREDIT NOTICE OF RIGHT TO CANCEL.

Borrower: MARTHA C. PUERTO-SWINSON          Date: 6-25-07

PAY TO THE ORDER OF

WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC

BY _Michele Sjolander_

MICHELE SJOLANDER
EXECUTIVE VICE PRESIDENT

Borrower: _____ Date: _____

Borrower: _____ Date: _____

Borrower: _____ Date: _____

Exhibit A

Prepared by: GAIL MORRILL

**HOME EQUITY
CONFIRMATION AGREEMENT**

AGENT:

| | |
|---|---|
| ORIGINATION DATE: | 06/07/2007 |
| AGREEMENT DATE: | |
| APPLICANT: | MARTHA C. PUERTO-SWINSON |
| CO-APPLICANT: | |
| PROPERTY ADDRESS: | 9111 SW 22ND CT UNIT A DAVIE, FL 33324-6855 |

BRANCH # 0000248    2690 WESTON ROAD 1200
WESTON, FL 33331

LOAN NUMBER: ████3356
LOAN AMOUNT: 63,500.00
LOAN TYPE: HELOC -- Stand Alone/ 23.96%/Preferred/Cost

INDEX: WSJ Prime Rate
OCCUPANCY: OWNER OCCUPIED

CONFIRMATION NO.: 9704
POINTS: 0.000
AGREEMENT TERM: 30 Days
EXPIRATION DATE: 07/20/2007

|  MARGIN  | CURRENT INDEX | INT. RATE CEILING |
|---|---|---|
| 0.750 | 8.250 | 18.000 |

This Agreement covers only the above described Applicant, property, and loan program and is subject to the following terms and conditions. **YOU MUST SIGN THIS AGREEMENT AND RETURN IT TO THE LENDER WITHIN 10 DAYS OF THE DATE OF THIS AGREEMENT.**

1. [ ] This home equity line of credit loan is an adjustable rate mortgage loan, and the interest rate is subject to periodic adjustment. The interest rate will be based on the then-current value of the Index plus the Margin shown above. The loan you have applied for also has an Introductory Interest Rate, which may be lower or greater than the rate that you will be required to pay for the remaining term of the loan. Refer to the "Important Terms of Our Home Equity Line of Credit" disclosure for complete information.

   [X] This home equity line of credit loan is an adjustable rate mortgage loan, and the interest rate is subject to periodic adjustment. The interest rate after closing will be based on the then-current value of the Index plus the Margin shown above. Refer to the "Important Terms of Our Home Equity Line of Credit" disclosure for complete information.

   [ ] This home equity loan is an adjustable rate mortgage loan, and the interest rate is subject to periodic adjustment. The interest rate will be based on the then-current value of the Index plus the Margin shown above. The loan you have applied for also has an Introductory Interest Rate, which may be lower or greater than the rate that you will be required to pay for the remaining term of the loan.

2. The loan must close, the three-day rescission period (unless such a period is not applicable) must expire, and funds must be disbursed on or before the expiration date set forth above.

3. Upon loan closing, the Lender must receive a valid first or second lien on the property, as specified in the loan application, and title must be clear, without defects unacceptable to Lender. If required, there must be title insurance in an amount and form acceptable to the Lender.

4. The Applicant must submit to the Lender a complete loan application, including any additional supporting documentation which the Lender may request in order to enable the Lender to make an underwriting decision.

5. If this Agreement covers a "reduced documentation" loan application, the Lender reserves the right, in its discretion, to require the Applicant to submit a complete loan application with any additional supporting documentation which the Lender may request. This may result in delays due to the time the Lender will need to verify the information contained in the complete loan application and/or supporting documentation.

6. This is not a loan approval or loan commitment. Any program described above may not be available for Applicant. The Lender will not close the loan unless, among other things, it approves the Applicant's loan application, including employment, income, assets, credit and property, and all conditions of such approval are satisfied prior to loan closing.

7. As of the date of loan closing, the Applicant must have hazard insurance on the property covering the replacement cost of the dwelling with an insurance carrier acceptable to the Lender. If the property is located in a special flood hazard area, flood insurance will be required. If the property includes commonly owned area, a master policy insurance certificate will be required. Insurance against additional perils, including but not limited to earthquake, may also be required.

● Home Equity - Confirmation Agreement
2C799-XX (10/05)(g)

Page 1 of 2

**Exhibit A**

LOAN #: ████3356

8.  The Applicant must complete or cause to be completed all required construction, tests or repairs prior to loan closing, and the property must be suitable for occupancy. The Applicant must obtain all required inspections or certifications by applicable and appropriate authorities prior to loan closing. These include, but are not limited to, wood-destroying insect inspection, repair and abatement; radon test; well water or septic system acceptance; local occupancy or use permits; and repairs required by the appraiser as a valuation condition.

9.  If this Agreement covers a purchase transaction, the sale must close with each party paying costs and expenses as specified in the copy of the purchase agreement supplied to the Lender. Any changes in such purchase agreement must be approved by the Lender prior to closing.

10. The points specified above  ☐ do  ☒ do not  include all other loan fees, costs and expenses.

11. The Lender estimates that it will take approximately 30   days to process, approve, close and fund the loan. The Lender agrees to use commercially reasonable efforts to fund the loan prior to the expiration date of this Agreement. However, this Agreement is not a commitment to close and fund the loan prior to the expiration date. Delays may occur, and this Agreement may expire prior to loan closing due to a variety of circumstances. Such circumstances include, but are not limited to, unforeseeable or extraordinary events, delays in receipt or failure to receive various required information, documents or fees from either the applicant or third parties, and acts of God. The Lender agrees to exercise reasonable efforts to obtain third-party documentation. Nevertheless, the expiration date of this Agreement shall not be extended as a result of any such circumstances or events.

12. Regardless of whether or not loan documents have been signed, if the Lender discovers a material change in the information provided with respect to the loan, including but not limited to, the borrowers' income, employment, credit or the property, the Lender shall not be obligated to fund the loan, and the expiration date of this Agreement shall not be extended as a result of any such circumstances or events.

13. If the loan does not close and funds are not disbursed prior to the expiration date of this Agreement, the Lender and the Applicant may enter into a new Confirmation Agreement. The interest rate and points specified in such new Agreement may be higher than either of the interest rate and points specified above or the Lender's then-current market rate and points.

Any questions concerning the terms and conditions of this Agreement may be directed to
DALE ALEXANDER                        (954) 660-3940

BY SIGNING BELOW, LENDER AND APPLICANT AGREE TO THE TERMS AND CONDITIONS OF THIS CONFIRMATION AGREEMENT.
**COUNTRYWIDE HOME LOANS, INC.**

BY _____       TITLE  CLUES LOAN PROCESSOR
    GAIL MORRILL

Please sign and date below; return the original and keep a copy for your records.

I (We) have read this Confirmation Agreement and agree to all the terms and conditions set forth herein.

_Martha C. Puerto Swinson_                    6-25-07
Signature                        Date        Signature                        Date
MARTHA C. PUERTO-SWINSON

_____              _____
Signature                        Date        Signature                        Date

● Home Equity - Confirmation Agreement
2C769-XX (10/05)                             Page 2 of 2

Exhibit A

# EXHIBIT B

5

Exhibit A

Pd 3
00

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA  91410-0423
This document was prepared by:
GAIL MORRILL
COUNTRYWIDE HOME LOANS, INC.

INSTR # 107201889
OR BK  44302  Pages 807 - 616
RECORDED 07/09/07 14:41:58
BROWARD COUNTY COMMISSION
DOC STMP-M - $222.25
INT TAX  /1 $127.00
DEPUTY CLERK 3075
#1, 10 Pages



——————— [Space Above This Line For Recording Data] ———————

3137617                                    3358█
[Escrow/Closing #]                         [Doc ID #]

## MORTGAGE
(Line of Credit)

MIN 1000157-0008247242-0

THIS MORTGAGE, dated   JUNE 25, 2007      , is between
MARTHA C PUERTO-SWINSON, AND JAMES T SWINSON, ~HUSBAND AND~ WIFE AND HUSBAND

residing at
9111 A SW 22 COURT
the person or persons signing as "Mortgagor(s)" below and hereinafter referred to as "we," "our," or "us"
and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ("MERS") a Delaware corporation
with an address of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS acting solely as nominee for
COUNTRYWIDE HOME LOANS, INC.
("Lender" or "you") and its successors and assigns. MERS is the "Mortgagee" under this Mortgage.

MORTGAGED PREMISES: In consideration of the loan hereinafter described, we hereby mortgage,
grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the
successors and assigns of MERS, the premises located at:
9111 SW 22ND CT UNIT A
                                          Street
        DAVIE                                      BROWARD
       Municipality                                  County
FL   33324-6855   (the "Premises").
State      ZIP
and further described as:
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

● MERS HELOC - FL MORTGAGE
2D993-FL (11/05)(d)                      Page 1 of 5



Exhibit A

DOC ID #: ▉▉▉▉3358▉

The Premises includes all buildings and other improvements now or in the future on the Premises and all rights and interests which derive from our ownership, use or possession of the Premises and all appurtenances thereto.

WE UNDERSTAND and agree that MERS is a separate corporation acting solely as nominee for Lender and Lender's successors and assigns, and holds only legal title to the interests granted by us in this Mortgage, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender including, but not limited to, releasing or canceling this Mortgage

LOAN: This Mortgage will secure Lender's loan to us in the principal amount of $ 63,500.00          or so much thereof as may be advanced and readvanced from time to time to MARTHA C. PUERTO-SWINSON

, and

the Borrower(s) under the Home Equity Credit Line Agreement And Disclosure Statement (the "Note") dated 06/25/2007          , plus interest and costs, late charges and all other charges related to the loan, all of which sums are repayable according to the Note. This Mortgage will also secure the performance of all of our promises and agreements made by us and each Borrower and Co-Signer in the Note, all of our promises and agreements in this Mortgage, any extensions, renewals, amendments, supplements and other modifications of the Note, and any amounts advanced by you under the terms of the section of this Mortgage entitled "Our Authority To You." Loans under the Note may be made, repaid and remade from time to time in accordance with the terms of the Note and subject to the Credit Limit set forth in the Note.

OWNERSHIP: We are the sole owner(s) of the Premises. We have the legal right to mortgage the Premises to you.

OUR IMPORTANT OBLIGATIONS:

(a) TAXES: We will pay all real estate taxes, assessments, water charges and sewer rents relating to the Premises when they become due. We will not claim any credit on, or make deduction from, the loan under the Note because we pay these taxes and charges. We will provide Lender with proof of payment upon request.

(b) MAINTENANCE: We will maintain the building(s) on the Premises in good condition. We will not make major changes in the building(s) except for normal repairs. We will not tear down any of the building(s) on the Premises without first getting Lender's consent. We will not use the Premises illegally. If this Mortgage is on a unit in a condominium or a planned unit development, we shall perform all of our obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development and constituent documents.

(c) INSURANCE: We will keep the building(s) on the Premises insured at all time against loss, by fire, flood and any other hazards Lender may specify. We may choose the insurance company, but our choice is subject to Lender's reasonable approval. The policies must be for at least the amounts and the time periods that Lender specifies. We will deliver to Lender upon Lender's request the policies or other proof of the insurance. The policies must name Lender as "mortgagee" and "loss-payee" so that Lender will receive payment on all insurance claims, to the extent of this Mortgage, before we do. The insurance policies must also provide that Lender be given not less than 10 days prior written notice of any cancellation or reduction in coverage, for any reason. Upon request, we shall deliver the policies, certificates or other evidence of insurance to Lender. In the event of loss or damage to the Premises, we will immediately notify Lender in writing and file a proof of loss with the insurer. Lender may file a proof of loss on our behalf if we fail or refuse to do so. Lender may also sign our name to any check, draft or other order for the payment of insurance proceeds in the event of loss or damage to the Premises. If Lender receives payment of a claim, Lender will have the right to choose to use the money either to repair the Premises or to reduce the amount owing on the Note.

(d) CONDEMNATION: We assign to Lender the proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Premises, or part thereof, or for conveyance in lieu of condemnation, all of which shall be paid to Lender, subject to the terms of any Prior Mortgage.

● MERS HELOC - FL MORTGAGE
2D998-FL (11/05)                                    Page 2 of 6

Exhibit A

DOC ID #: ████████3358██

(e) SECURITY INTEREST: We will join with you in signing and filing documents and, at our expense, in doing whatever you believe is necessary to perfect and continue the perfection of your lien and security interest in the Premises. It is agreed that the Lender shall be subrogated to the claims and liens of all parties whose claims or liens are discharged or paid with the proceeds of the Agreement secured hereby.

(f) OUR AUTHORITY TO YOU: If we fail to perform our obligations under this Mortgage, Lender may, if Lender chooses, perform our obligations and pay such costs and expenses. Lender will add the amounts Lender advances to the sums owing on the Note, on which Lender will charge interest at the interest rate set forth in the Note. If, for example, we fail to honor our promises to maintain insurance in effect, or to pay filing fees, taxes or the costs necessary to keep the Premises in good condition and repair or to perform any of our agreements with Lender, Lender may, if Lender chooses, advance any sums to satisfy any of our agreements with Lender or MERS and charge us interest on such advances at the interest rate set forth in the Note. This Mortgage secures all such advances. Lender's payments on our behalf will not cure our failure to perform our promises in this Mortgage. Any replacement insurance that Lender obtains to cover loss or damages to the Premises may be limited to the amount owing on the Note plus the amount of any Prior Mortgages.

(g) PRIOR MORTGAGE: If the provisions of this paragraph are completed, this Mortgage is subject and subordinate to a prior mortgage dated  JULY 01, 2006     and given by us to
COUNTRYWIDE HOME LOANS
as mortgagee, in the original amount of $ 175,000.00          (the "Prior Mortgage"). We shall not increase, amend or modify the Prior Mortgage without your prior written consent and shall upon receipt of any written notice from the holder of the Prior Mortgage promptly deliver a copy of such notice to you. We shall pay and perform all of our obligations under the Prior Mortgage as and when required under the Prior Mortgage.

(h) HAZARDOUS SUBSTANCES: We shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Premises. We shall not do, nor allow anyone else to do, anything affecting the Premises that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Premises of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Premises. As used in this paragraph, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph, "Environmental Law" means federal laws and laws of the jurisdiction where the Premises are located that relate to health, safety or environmental protection.

(i) SALE OF PREMISES: We will not sell, transfer ownership of, mortgage or otherwise dispose of our interest in the Premises, in whole or in part, or permit any other lien or claim against the Premises without Lender's prior written consent.

(j) INSPECTION: We will permit Lender to inspect the Premises at any reasonable time.

NO LOSS OF RIGHTS: The Note and this Mortgage may be negotiated or assigned without releasing us or the Premises. Lender may add or release any person or property obligated under the Note and this Mortgage with losing rights in the Premises.

DEFAULT: Except as may be prohibited by applicable law, and subject to any advance notice and cure period if required by applicable law, if any event or condition of default as described in the Note occurs, Lender may foreclose upon this Mortgage. This means that Lender may arrange for the Premises to be sold, as provided by law, in order to pay off what we owe on the Note and under this Mortgage. If the money Lender receive from the sale is not enough to pay off what we owe, we will still owe the difference which Lender may seek to collect from us in accordance with applicable law. In addition, Lender may, in accordance with applicable law, (i) enter on and take possession of the Premises; (ii) collect the rental payments, including over-due rental payments, directly from tenants; (iii) manage the Premises; and (iv) sign, cancel and change leases. We agree that the interest rate set forth in the Note will continue before and after a default, entry of a judgment and foreclosure. In addition, Lender shall be entitled to collect all reasonable fees and costs actually incurred by Lender in proceeding to foreclosure, including, but not limited to, reasonable attorneys fees and costs of documentary evidence, abstracts and title reports.

ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER: As additional security, we assign to you the rents of the Premises. You or a receiver appointed by the courts shall be entitled to enter upon, take possession of and manage the Premises and collect the rents of the Premises including those past due.

Exhibit A

DOC ID #: ▮▮▮▮3358▮

**WAIVERS:** To the extent permitted by applicable law, we waive and release any error or defects in proceedings to enforce this Mortgage and hereby waive the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale and homestead exemption.

**BINDING EFFECT:** Each of us shall be fully responsible for all of the promises and agreements in this Mortgage. Until the Note has been paid in full and the obligation to make further advances under the Note has been terminated, the provisions of this Mortgage will be binding on us, our legal representatives, our heirs and all future owners of the Premises. This Mortgage is for MERS and Lender's benefit and for the benefit of anyone to whom it may be assigned. Upon payment in full of all amounts owing under the Note and this Mortgage, and provided any obligation to make further advances under the Note has terminated, this Mortgage and your rights in the Premises shall end.

**NOTICE:** Except for any notice required under applicable law to be given in another manner, (a) any notice to us provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by regular first class mail addressed to us at the last address appearing in your records or at such other address as we may designate by notice to you as provided herein, and (b) any notice to you shall be given by certified mail, return receipt requested, to your address at
For MERS:
P.O. Box 2026, Flint, MI 48501-2026
For Lender:
4500 Park Granada MSN# SVB-314, Calabasas, CA 91302-1613
or to such other address as you may designate by notice to us. Any notice provided for in this Mortgage shall be deemed to have been given to us or you when given in the manner designated herein.

**RELEASE:** Upon payment of all sums secured by this Mortgage and provided the obligation to make further advances under the Note has terminated, you shall discharge this Mortgage without charge to us, except that we shall pay any fees for recording of a satisfaction of this Mortgage.

**GENERAL:** You can waive or delay enforcing any of your rights under this Mortgage without losing them. Any waiver by you of any provisions of this Mortgage will not be a waiver of that or any other provision on any other occasion.



● MERS HELOC - FL MORTGAGE
2D093-FL (11/05)                    Page 4 of 5

Exhibit A

DOC ID #: ▓▓▓3358▓▓▓

THIS MORTGAGE has been signed by each of us under seal on the date first above written.

WITNESS:

_Nilsa Pagan_

NILSA PAGAN

_Martha C. Puerto-Swinson_

Mortgagor MARTHA C. PUERTO-SWINSON
9111 A NW 22 COURT
SUNRISE, FL 33324

_____

Mortgagor: JAMES T. SWINSON

_____

Mortgagor:

_____

Mortgagor:

**STATE OF FLORIDA,**       BROWARD       **County ss:**

The foregoing instrument was acknowledged before me this 25th day of June, 2007 by
Martha C. Puerto-Swinson and James T. Swinson, wife and
husband,
who is personally known to me or who has produced their Florida Driver's       as identification.
                                        Licenses

_____
Notary Public - State of Florida at Large


Notary Public State of Florida
Jeffrey Homer
My Commission DD583807
Expires 10/18/2010

Exhibit A

Prepared by: GAIL MORRILL

## COUNTRYWIDE HOME LOANS, INC.

Branch #: 0000248
2690 WESTON ROAD #200
WESTON, FL 33331
Phone: (954)660-3940
Br Fax No.: (954)349-3603

DATE:        06/25/2007
CASE #:
DOC ID #:              3358
BORROWER: MARTHA C. PUERTO-SWINSON
PROPERTY ADDRESS: 9111 SW 22ND CT UNIT A
                  DAVIE, FL 33324-6855

### LEGAL DESCRIPTION EXHIBIT A

A portion of Tract M-2, according to the Plat
thereof, as recorded in Plat Book 103, at Page
49 of the Public Records of Broward County,
Florida, being more particularly described on
Exhibit 'A' attached hereto and made a part
hereof.

FHA/VA/CONV
Legal Description Exhibit A
2C404-XX (04/03)(d)



# Exhibit A

OR BK 30317 PG 1574

A PORTION OF TRACT M-2, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 103, PAGE 49, OF THE PUBLIC RECORDS OF BROWARD COUNTY, FLORIDA, BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCING AT THE NORTHWEST CORNER OF SAID TRACT M-2; THENCE SOUTH 08°29'28" EAST, A DISTANCE OF 69.87 FEET; THENCE SOUTH 39°41'12" EAST, A DISTANCE OF 100.00 FEET; THENCE SOUTH 14°42'17" EAST, A DISTANCE OF 68.85 FEET. THE LAST THREE DESCRIBED COURSES BEING FURTHER DESCRIBED AS BEING ON THE WESTERLY BOUNDARY OF SAID TRACT M-2; THENCE NORTH 75°17'43" EAST, A DISTANCE OF 19.00 FEET TO THE POINT OF BEGINNING OF THIS DESCRIPTION; THENCE CONTINUE NORTH 75°17'43" EAST, A DISTANCE OF 31.00 FEET; THENCE NORTH 14°42'17" WEST, A DISTANCE OF 39.50 FEET; THENCE SOUTH 75°17'43" WEST, A DISTANCE OF 31.00 FEET; THENCE SOUTH 14°42'17" EAST, A DISTANCE OF 39.50 FEET TO THE POINT OF BEGINNING.

ALSO KNOWN AS:

UNIT A, BUILDING 3, ACCORDING TO THE PROPERTY PLAN AS SET FORTH IN THE DECLARATION OF COVENANTS, RESTRICTIONS AND EASEMENTS OF THE PATIO HOMES OF PINE ISLAND RIDGE, DATED FEBRUARY 12, 1980 AND RECORDED ON APRIL 2, 1980, IN OFFICIAL RECORDS BOOK 8825, AT PAGE 854, OF THE PUBLIC RECORDS OF BROWARD COUNTY, FLORIDA.

EXHIBIT "A"

Exhibit A

DOC ID #: ▓▓▓▓▓▓3358▓▓▓▓ 

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this TWENTY-FIFTH    day of
JUNE, 2007       , and is incorporated into and shall be deemed to amend and supplement
the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date, given by
the undersigned (the "Borrower") to secure Borrower's Note to
COUNTRYWIDE HOME LOANS, INC.

(the "Lender") of the same date and covering the Property described in the Security Instrument and
located at:

9111 SW 22ND CT UNIT A, DAVIE, FL 33324-6855

[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with
other such parcels and certain common areas and facilities, as described in

THE COVENANTS, CONDITIONS, AND RESTRICTIONS FILED OF RECORD
THAT AFFECT THE PROPERTY

MULTISTATE PUD RIDER - Single Family/Second Mortgage
Page 1 of 3

 -207R (0411)  CHL (12/05)(d)
VMP Mortgage Solutions, Inc.                                          3/99



Exhibit A

DOC ID #: ██████3358█

(the "Declaration"). The Property is a part of a planned unit development known as

PATIO HOMES OF PINE ISLAND RIDGE

[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the: (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Hazard Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Uniform Covenant 2 for the monthly payment to Lender of the yearly premium installments for hazard insurance on the Property; and (ii) Borrower's obligation under Uniform Covenant 5 to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage provided by the master or blanket policy.

In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Uniform Covenant 9.

-207R (0411)    CHL (12/05)            Page 2 of 3                                    3/99

Exhibit A

DOC ID #: ████████3358██

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

_____ (Seal)
MARTHA C. PUERTO-SWINSON                 - Borrower

_____ (Seal)
JAMES T. SWINSON                         - Borrower

_____ (Seal)
                                         - Borrower

_____ (Seal)
                                         - Borrower

VMP -207R (0411)   CHL (12/05)          Page 3 of 3                    3/99

Exhibit A

# EXHIBIT C

6

Exhibit A



**Bank of America**
Home Loans

Loan Number: ████3358
Statement Period: 06/2007 - 08/2019
Date Prepared: 08/07/2019

Property Address:
9111 SW 22ND CT UNIT A
DAVIE, FL 33324

Page 3

| Transaction Date | Description | Total Payment | PMT/MO | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| | **Beginning Balance** | | | .00 | | .00 | .00 | | | .00 |
| 06/29/2007 | ORIGINATION FEE | 26.00 | 06/2007 | -26.00 / 26.00 | .00 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 06/29/2007 | ORIGINATION FEE | 25.00 | 06/2007 | -25.00 / 51.00 | .00 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 06/29/2007 | ORIGINATION FEE | 65.00 | 06/2007 | -65.00 / 116.00 | .00 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 06/29/2007 | CLOSING COST FEE | 1,047.76 | 06/2007 | -1,047.76 / 1,163.76 | .00 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 06/29/2007 | INITIAL DRAW | 18,836.24 | 06/2007 | -18,836.24 / 20,000.00 | .00 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 07/25/2007 | REGULAR PAYMENT | 9.86 | 07/2007 | .00 / 20,000.00 | 9.86 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 08/24/2007 | REGULAR PAYMENT | 152.88 | 08/2007 | .00 / 20,000.00 | 152.88 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 08/30/2007 | SUBSEQUENT DRAW | 7,836.62 | 08/2007 | -7,836.62 / 27,836.62 | .00 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 08/30/2007 | SUBSEQUENT DRAW | 418.36 | 08/2007 | -418.36 / 28,254.98 | .00 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 09/12/2007 | SUBSEQUENT DRAW | 188.33 | 08/2007 | -188.33 / 28,443.31 | .00 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 09/28/2007 | REGULAR PAYMENT | 156.95 | 09/2007 | .00 / 28,443.31 | 156.95 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 09/28/2007 | SUBSEQUENT DRAW | 1,700.00 | 08/2007 | -1,700.00 / 30,143.31 | .00 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 10/01/2007 | SUBSEQUENT DRAW | 547.43 | 09/2007 | -547.43 / 30,690.74 | .00 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 10/12/2007 | SUBSEQUENT DRAW | 800.00 | 09/2007 | -800.00 / 31,490.74 | .00 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 10/12/2007 | SUBSEQUENT DRAW | 449.32 | 09/2007 | -449.32 / 31,940.06 | .00 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 10/18/2007 | SUBSEQUENT DRAW | 590.84 | 09/2007 | -590.84 | .00 | .00 | .00 | .00 | .00 | .00 |

Exhibit A

Bank of America
Home Loans

Page 4

| Transaction Date | Description | Total Payment | PMT/MO | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 10/26/2007 | REGULAR PAYMENT | 211.15 | 10/2007 | .00 / 32,530.90 | 211.15 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 10/26/2007 | SUBSEQUENT DRAW | 600.80 | 09/2007 | -600.80 / 33,131.70 | .00 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 11/01/2007 | SUBSEQUENT DRAW | 370.23 | 10/2007 | -370.23 / 33,501.93 | .00 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 11/02/2007 | SUBSEQUENT DRAW | 5,260.39 | 10/2007 | -5,260.39 / 38,762.32 | .00 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 11/07/2007 | SUBSEQUENT DRAW | 671.91 | 10/2007 | -671.91 / 39,434.23 | .00 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 11/15/2007 | SUBSEQUENT DRAW | 200.00 | 10/2007 | -200.00 / 39,634.23 | .00 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 11/16/2007 | SUBSEQUENT DRAW | 467.57 | 10/2007 | -467.57 / 40,101.80 | .00 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 11/28/2007 | REGULAR PAYMENT | 230.15 | 11/2007 | .00 / 40,101.80 | 230.15 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 12/03/2007 | SUBSEQUENT DRAW | 306.00 | 11/2007 | -306.00 / 40,407.80 | .00 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 12/05/2007 | SUBSEQUENT DRAW | 2,219.35 | 11/2007 | -2,219.35 / 42,627.15 | .00 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 12/18/2007 | SUBSEQUENT DRAW | 642.04 | 11/2007 | -642.04 / 43,269.19 | .00 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 12/21/2007 | REGULAR PAYMENT | 267.60 | 12/2007 | .00 / 43,269.19 | 267.60 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 12/31/2007 | SUBSEQUENT DRAW | 311.29 | 12/2007 | -311.29 / 43,580.48 | .00 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 01/07/2008 | SUBSEQUENT DRAW | 3,419.52 | 12/2007 | -3,419.52 / 47,000.00 | .00 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 01/07/2008 | SUBSEQUENT DRAW | 1,802.50 | 12/2007 | -1,802.50 / 48,802.50 | .00 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 01/22/2008 | SUBSEQUENT DRAW | 416.63 | 12/2007 | -416.63 / 49,219.13 | .00 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 01/29/2008 | SUBSEQUENT DRAW | 650.79 | 12/2007 | -650.79 / 49,869.92 | .00 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 01/29/2008 | REGULAR PAYMENT | 298.64 | 01/2008 | .00 / 49,869.92 | 298.64 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |

Exhibit A

**Bank of America**
Home Loans

| Transaction Date | Description | Total Payment | PMT/MO | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 02/11/2008 | SUBSEQUENT DRAW | 427.71 | 01/2008 | -427.71<br>50,297.63 | .00 | .00 | .00 | .00 | .00 | .00 |
| 02/11/2008 | SUBSEQUENT DRAW | 2,465.94 | 01/2008 | -2,465.94<br>52,763.57 | .00 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 02/21/2008 | REGULAR PAYMENT | 325.17 | 02/2008 | .00<br>52,763.57 | 325.17 | .00 | .00 | .00 | .00 | .00 |
| 03/21/2008 | REGULAR PAYMENT | 276.86 | 03/2008 | .00<br>52,763.57 | 276.86 | .00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 03/31/2008 | SUBSEQUENT DRAW | 2,465.94 | 03/2008 | -2,465.94<br>55,229.51 | .00 | .00 | .00 | .00 | .00 | .00 |
| 05/01/2008 | REGULAR PAYMENT | 302.12 | 04/2008 | .00<br>55,229.51 | 302.12 | .00<br>.00 | .00 | .00 | .00<br>15.11 | .00<br>.00 |
| 05/15/2008 | SUBSEQUENT DRAW | 1,607.68 | 04/2008 | -1,607.68<br>56,837.19 | .00 | .00 | .00 | .00 | .00 | .00 |
| 05/29/2008 | SUBSEQUENT DRAW | 216.00 | 04/2008 | -216.00<br>57,053.19 | .00 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 05/30/2008 | BILLING ADJUSTMNT | 15.11 | 04/2008 | .00<br>57,053.19 | .00 | .00 | .00 | .00 | 13.58 | .00 |
| 06/02/2008 | REGULAR PAYMENT | 271.62 | 05/2008 | .00<br>57,053.19 | 271.62 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 06/04/2008 | REGULAR PAYMENT | 286.73 | 06/2008 | .00<br>57,053.19 | 273.38 | .00 | .00 | .00 | 13.35<br>.23 | .00<br>.00 |
| 06/04/2008 | SUBSEQUENT DRAW | 364.00 | 05/2008 | -364.00<br>57,417.19 | .00 | .00 | .00 | .00 | .00 | .00 |
| 06/06/2008 | SUBSEQUENT DRAW | 684.00 | 06/2008 | -684.00<br>58,101.19 | .00 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 06/23/2008 | SUBSEQUENT DRAW | 558.00 | 06/2008 | -558.00<br>58,659.19 | .00 | .00 | .00 | .00 | .00 | .00 |
| 07/01/2008 | SUBSEQUENT DRAW | 367.40 | 06/2008 | -367.40<br>59,026.59 | .00 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 07/14/2008 | SUBSEQUENT DRAW | 576.00 | 06/2008 | -576.00<br>59,602.59 | .00 | .00 | .00 | .00 | .00 | .00 |
| 07/22/2008 | REGULAR PAYMENT | 349.06 | 07/2008 | .00<br>59,602.59 | 273.83 | .00<br>.00 | .00 | .00 | .23<br>.00 | .00<br>.00 |
| 07/22/2008 | MISC. POSTING | .94 | 07/2008 | .94<br>59,601.65 | .00 | .00 | .00 | .00 | .00 | .00 |

## Exhibit A

Bank of America
Home Loans

Page 6

| Transaction Date | Description | Total Payment | PMT/MO | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 07/22/2008 | SUBSEQUENT DRAW | 432.00 | 06/2008 | -432.00 / 60,033.65 | .00 | .00 | .00 | .00 | .00 | .00 |
| 07/23/2008 | SUBSEQUENT DRAW | 425.00 | 07/2008 | -425.00 / 60,458.65 | .00 | .00 | .00 | .00 | .00 | .00 |
| 07/28/2008 | SUBSEQUENT DRAW | 486.00 | 07/2008 | -486.00 / 60,944.65 | .00 | .00 | .00 | .00 | .00 | .00 |
| 08/11/2008 | SUBSEQUENT DRAW | 522.00 | 07/2008 | -522.00 / 61,466.65 | .00 | .00 | .00 | .00 | .00 | .00 |
| 08/13/2008 | SUBSEQUENT DRAW | 374.00 | 07/2008 | -374.00 / 61,840.65 | .00 | .00 | .00 | .00 | .00 | .00 |
| 08/25/2008 | REGULAR PAYMENT | 290.68 | 08/2008 | .00 / 61,840.65 | 290.68 | .00 | .00 | .00 | .00 | .00 |
| 08/25/2008 | MISC. POSTING | 9.32 | 08/2008 | 9.32 / 61,831.33 | .00 | .00 | .00 | .00 | .00 | .00 |
| 08/27/2008 | SUBSEQUENT DRAW | 450.00 | 08/2008 | -450.00 / 62,281.33 | .00 | .00 | .00 | .00 | .00 | .00 |
| 09/02/2008 | SUBSEQUENT DRAW | 500.00 | 08/2008 | -500.00 / 62,781.33 | .00 | .00 | .00 | .00 | .00 | .00 |
| 09/12/2008 | SUBSEQUENT DRAW | 700.00 | 08/2008 | -700.00 / 63,481.33 | .00 | .00 | .00 | .00 | .00 | .00 |
| 09/22/2008 | REGULAR PAYMENT | 300.00 | 09/2008 | .00 / 63,481.33 | 300.00 | .00 | .00 | .00 | .00 | .00 |
| 09/22/2008 | MISC. POSTING | 200.00 | 09/2008 | 200.00 / 63,281.33 | .00 | .00 | .00 | .00 | .00 | .00 |
| 10/14/2008 | REGULAR PAYMENT | 297.62 | 10/2008 | .00 / 63,281.33 | 297.62 | .00 | .00 | .00 | .00 | .00 |
| 10/14/2008 | MISC. POSTING | 102.38 | 10/2008 | 102.38 / 63,178.95 | .00 | .00 | .00 | .00 | .00 | .00 |
| 11/18/2008 | REGULAR PAYMENT | 307.90 | 11/2008 | .00 / 63,178.95 | 307.90 | .00 | .00 | .00 | .00 | .00 |
| 11/18/2008 | MISC. POSTING | 2.10 | 11/2008 | 2.10 / 63,176.85 | .00 | .00 | .00 | .00 | .00 | .00 |
| 12/22/2008 | REGULAR PAYMENT | 245.98 | 12/2008 | .00 / 63,176.85 | 245.98 | .00 | .00 | .00 | .00 | .00 |
| 12/22/2008 | MISC. POSTING | 54.02 | 12/2008 | 54.02 / 63,122.83 | .00 | .00 | .00 | .00 | .00 | .00 |

Exhibit A

**Bank of America**

Home Loans

| Transaction Date | Description | Total Payment | PMT/MO | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 01/26/2009 | REGULAR PAYMENT | 254.10 | 01/2009 | .00 63,122.83 | 254.10 | .00 | .00 | .00 | .00 | .00 |
| 01/26/2009 | MISC. POSTING | 45.90 | 01/2009 | 45.90 63,076.93 | .00 | .00 | .00 | .00 | .00 | .00 |
| 03/02/2009 | REGULAR PAYMENT | 300.00 | 03/2009 | .00 63,076.93 | 300.00 | .00 | .00 | .00 | .00 | .00 |
| 03/23/2009 | REGULAR PAYMENT | 107.96 | 03/2009 | .00 63,076.93 | 107.96 | .00 | .00 | .00 | .00 | .00 |
| 03/23/2009 | MISC. POSTING | 107.04 | 03/2009 | 107.04 62,969.89 | .00 | .00 | .00 | .00 | .00 | .00 |
| 04/24/2009 | REGULAR PAYMENT | 214.18 | 04/2009 | .00 62,969.89 | 214.18 | .00 | .00 | .00 | .00 | .00 |
| 04/24/2009 | MISC. POSTING | 85.82 | 04/2009 | 85.82 62,884.07 | .00 | .00 | .00 | .00 | .00 | .00 |
| 05/29/2009 | REGULAR PAYMENT | 206.95 | 05/2009 | .00 62,884.07 | 206.95 | .00 | .00 | .00 | .00 | .00 |
| 06/25/2009 | REGULAR PAYMENT | 213.63 | 06/2009 | .00 62,884.07 | 213.63 | .00 | .00 | .00 | .00 | .00 |
| 07/24/2009 | REGULAR PAYMENT | 281.74 | 07/2009 | .00 62,884.07 | 206.74 | .00 | .00 | .00 | .00 | .00 |
| 07/24/2009 | MISC. POSTING | 18.26 | 07/2009 | 18.26 62,865.81 | .00 | .00 | .00 | .00 | .00 | .00 |
| 08/28/2009 | REGULAR PAYMENT | 213.62 | 08/2009 | .00 62,865.81 | 213.62 | .00 | .00 | .00 | .00 | .00 |
| 08/28/2009 | MISC. POSTING | 36.38 | 08/2009 | 36.38 62,829.43 | .00 | .00 | .00 | .00 | .00 | .00 |
| 09/25/2009 | REGULAR PAYMENT | 213.56 | 09/2009 | .00 62,829.43 | 213.56 | .00 | .00 | .00 | .00 | .00 |
| 09/25/2009 | MISC. POSTING | 50.00 | 07/2009 | 50.00 62,779.43 | .00 | .00 | .00 | .00 | .00 | .00 |
| 09/28/2009 | MISC. POSTING | 50.00 | 08/2009 | 50.00 62,729.43 | .00 | .00 | .00 | .00 | .00 | .00 |
| 09/28/2009 | MISC. POSTING | 213.56 | 09/2009 | 213.56 62,515.87 | .00 | .00 | .00 | .00 | .00 153.69 | .00 |
| 09/30/2009 | PAYMENT REVERSAL | -213.56 | 09/2009 | -213.56 62,729.43 | .00 | .00 | .00 | .00 | .00 | .00 |

# Exhibit A

**Bank of America**
Home Loans

| Transaction Date | Description | Total Payment | PMT/MO | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 09/30/2009 | PAYMENT REVERSAL | -50.00 | 08/2009 | -50.00 / **62,779.43** | .00 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 10/26/2009 | REGULAR PAYMENT | 206.55 | 10/2009 | .00 / **62,779.43** | 206.55 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 10/26/2009 | MISC. POSTING | 13.45 | 10/2009 | 13.45 / **62,765.98** | .00 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 11/27/2009 | REGULAR PAYMENT | 213.27 | 11/2009 | .00 / **62,765.98** | 213.27 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 01/04/2010 | REGULAR PAYMENT | 206.35 | 12/2009 | .00 / **62,765.98** | 206.35 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 02/08/2010 | MISC. POSTING | 36.77 | 02/2010 | 36.77 / **62,729.21** | .00 | .00 / .00 | .00 | .00 | .00 / 10.66 | .00 / .00 |
| 02/08/2010 | REGULAR PAYMENT | 213.23 | 01/2010 | .00 / **62,729.21** | 213.23 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 03/25/2010 | REGULAR PAYMENT | 425.00 | 03/2010 | .00 / **62,729.21** | 405.74 | .00 / .00 | .00 | .00 | 19.26 / .00 | .00 / .00 |
| 04/26/2010 | REGULAR PAYMENT | 214.14 | 04/2010 | .00 / **62,729.21** | 213.11 | .00 / .00 | .00 | .00 | 1.03 / 1.03 | .00 / .00 |
| 04/26/2010 | MISC. POSTING | 35.86 | 04/2010 | 35.86 / **62,693.35** | .00 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 05/24/2010 | MISC. POSTING | 43.79 | 05/2010 | 43.79 / **62,649.56** | .00 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 05/24/2010 | REGULAR PAYMENT | 206.21 | 05/2010 | .00 / **62,649.56** | 206.21 | .00 / .00 | .00 | .00 | .00 / 32.32 | .00 / .00 |
| 06/25/2010 | REGULAR PAYMENT | 212.95 | 06/2010 | .00 / **62,649.56** | 212.95 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 06/25/2010 | MISC. POSTING | 37.05 | 06/2010 | 37.05 / **62,612.51** | .00 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 07/23/2010 | MISC. POSTING | 19.05 | 07/2010 | 19.05 / **62,593.46** | .00 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 07/23/2010 | REGULAR PAYMENT | 280.95 | 07/2010 | .00 / **62,593.46** | 205.95 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 08/23/2010 | MISC. POSTING | 37.30 | 05/2009 | 37.30 / **62,556.16** | .00 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 08/23/2010 | REGULAR PAYMENT | 212.70 | 08/2010 | .00 / **62,556.16** | 212.70 | .00 / .00 | .00 | .00 | .00 / 174.00 | .00 / .00 |

Exhibit A

**Bank of America**
Home Loans

Page 9

| Transaction Date | Description | Total Payment | PMT/MO | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 09/24/2010 | REGULAR PAYMENT | 212.61 | 09/2010 | .00<br>62,556.16 | 212.61 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 10/25/2010 | MISC. POSTING | 19.34 | 10/2010 | 19.34<br>62,536.82 | .00 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 10/25/2010 | REGULAR PAYMENT | 205.66 | 10/2010 | .00<br>62,536.82 | 205.66 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 11/24/2010 | MISC. POSTING | 37.50 | 11/2010 | 37.50<br>62,499.32 | .00 | .00<br>.00 | .00 | .00 | .00<br>57.43 | .00<br>.00 |
| 11/24/2010 | REGULAR PAYMENT | 212.50 | 11/2010 | .00<br>62,499.32 | 212.50 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 12/24/2010 | MISC. POSTING | 44.43 | 12/2010 | 44.43<br>62,454.89 | .00 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 12/24/2010 | REGULAR PAYMENT | 205.57 | 12/2010 | .00<br>62,454.89 | 205.57 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 01/24/2011 | MISC. POSTING | 37.71 | 01/2011 | 37.71<br>62,417.18 | .00 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 01/24/2011 | REGULAR PAYMENT | 212.29 | 01/2011 | .00<br>62,417.18 | 212.29 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 02/25/2011 | MISC. POSTING | 37.86 | 02/2011 | 37.86<br>62,379.32 | .00 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 02/25/2011 | REGULAR PAYMENT | 212.14 | 02/2011 | .00<br>62,379.32 | 212.14 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 03/25/2011 | MISC. POSTING | 58.49 | 03/2011 | 58.49<br>62,320.83 | .00 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 03/25/2011 | REGULAR PAYMENT | 191.51 | 03/2011 | .00<br>62,320.83 | 191.51 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 04/25/2011 | MISC. POSTING | 38.13 | 04/2011 | 38.13<br>62,282.70 | .00 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 04/25/2011 | REGULAR PAYMENT | 211.87 | 04/2011 | .00<br>62,282.70 | 211.87 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 05/24/2011 | REGULAR PAYMENT | 204.87 | 05/2011 | .00<br>62,282.70 | 204.87 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 05/24/2011 | MISC. POSTING | 45.13 | 05/2011 | 45.13<br>62,237.57 | .00 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 06/23/2011 | REGULAR PAYMENT | 211.55 | 06/2011 | .00<br>62,237.57 | 211.55 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |

Exhibit A

**Bank of America**
Home Loans

| Transaction Date | Description | Total Payment | PMT/MO | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 06/23/2011 | MISC. POSTING | 38.45 | 06/2011 | 38.45<br>62,199.12 | .00 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 07/22/2011 | REGULAR PAYMENT | 279.58 | 07/2011 | .00<br>62,199.12 | 204.58 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 07/22/2011 | MISC. POSTING | 20.42 | 07/2011 | 20.42<br>62,178.70 | .00 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 08/25/2011 | MISC. POSTING | 88.72 | 08/2011 | 88.72<br>62,089.98 | .00 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 08/25/2011 | REGULAR PAYMENT | 211.28 | 08/2011 | .00<br>62,089.98 | 211.28 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 09/26/2011 | MISC. POSTING | 38.83 | 09/2011 | 38.83<br>62,051.15 | .00 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 09/26/2011 | REGULAR PAYMENT | 211.17 | 09/2011 | .00<br>62,051.15 | 211.17 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 10/25/2011 | MISC. POSTING | 45.89 | 10/2011 | 45.89<br>62,005.26 | .00 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 10/25/2011 | REGULAR PAYMENT | 204.11 | 10/2011 | .00<br>62,005.26 | 204.11 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 11/22/2011 | REGULAR PAYMENT | 39.23 | 11/2011 | .00<br>62,005.26 | 39.23 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 11/22/2011 | REGULAR PAYMENT | 171.54 | 11/2011 | .00<br>62,005.26 | 171.54 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 11/22/2011 | MISC. POSTING | 39.23 | 11/2011 | 39.23<br>61,966.03 | .00 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 12/23/2011 | MISC. POSTING | 46.19 | 12/2011 | 46.19<br>61,919.84 | .00 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 12/23/2011 | REGULAR PAYMENT | 203.81 | 12/2011 | .00<br>61,919.84 | 203.81 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 01/25/2012 | REGULAR PAYMENT | 210.47 | 01/2012 | .00<br>61,899.84 | 210.47 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 01/25/2012 | MISC. POSTING | 20.00 | 01/2012 | 20.00<br>61,899.84 | .00 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 02/27/2012 | MISC. POSTING | 40.23 | 02/2012 | 40.23<br>61,859.61 | .00 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 02/27/2012 | REGULAR PAYMENT | 209.77 | 02/2012 | .00<br>61,859.61 | 209.77 | .00 | .00 | .00 | .00 | .00 |

Exhibit A

**Bank of America**
*Home Loans*

| Transaction Date | Description | Total Payment | PMT/MO | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 03/23/2012 | REGULAR PAYMENT | 196.17 | 03/2012 | .00 **61,859.61** | 196.17 | .00 **.00** | .00 | .00 | .00 **.00** | .00 **.00** |
| 03/23/2012 | MISC. POSTING | 43.83 | 03/2012 | 43.83 **61,815.78** | .00 | .00 **.00** | .00 | .00 | .00 **.00** | .00 **.00** |
| 04/25/2012 | REGULAR PAYMENT | 209.55 | 04/2012 | .00 **61,815.78** | 209.55 | .00 **.00** | .00 | .00 | .00 **.00** | .00 **.00** |
| 04/25/2012 | MISC. POSTING | 30.45 | 04/2012 | 30.45 **61,785.33** | .00 | .00 **.00** | .00 | .00 | .00 **.00** | .00 **.00** |
| 05/24/2012 | REGULAR PAYMENT | 202.65 | 05/2012 | .00 **61,785.33** | 202.65 | .00 **.00** | .00 | .00 | .00 **.00** | .00 **.00** |
| 05/24/2012 | MISC. POSTING | 47.35 | 05/2012 | 47.35 **61,737.98** | .00 | .00 **.00** | .00 | .00 | .00 **.00** | .00 **.00** |
| 06/25/2012 | REGULAR PAYMENT | 40.71 | 06/2012 | .00 **61,737.98** | 40.71 | .00 **.00** | .00 | .00 | .00 **.00** | .00 **.00** |
| 06/25/2012 | REGULAR PAYMENT | 168.58 | 06/2012 | .00 **61,737.98** | 168.58 | .00 **.00** | .00 | .00 | .00 **.00** | .00 **.00** |
| 06/25/2012 | MISC. POSTING | 40.71 | 06/2012 | 40.71 **61,697.27** | .00 | .00 **.00** | .00 | .00 | .00 **.00** | .00 **.00** |
| 07/23/2012 | REGULAR PAYMENT | 202.39 | 07/2012 | .00 **61,697.27** | 202.39 | .00 **.00** | .00 | .00 | .00 **.00** | .00 **.00** |
| 07/23/2012 | MISC. POSTING | 47.61 | 07/2012 | 47.61 **61,649.66** | .00 | .00 **.00** | .00 | .00 | .00 **.00** | .00 **.00** |
| 08/24/2012 | REGULAR PAYMENT | 551.74 | 08/2012 | 342.76 **61,306.90** | 208.98 | .00 **.00** | .00 | .00 | .00 **.00** | .00 **.00** |
| 08/24/2012 | MISC. POSTING | .26 | 08/2012 | .26 **61,306.64** | .00 | .00 **.00** | .00 | .00 | .00 **.00** | .00 **.00** |
| 09/25/2012 | MISC. POSTING | .56 | 08/2012 | .56 **61,306.08** | .00 | .00 **.00** | .00 | .00 | .00 **.00** | .00 **.00** |
| 09/25/2012 | REGULAR PAYMENT | 551.44 | 09/2012 | 342.76 **60,963.32** | 208.68 | .00 **.00** | .00 | .00 | .00 **.00** | .00 **.00** |
| 10/26/2012 | MISC. POSTING | .46 | 10/2012 | .46 **60,962.86** | .00 | .00 **.00** | .00 | .00 | .00 **286.98** | .00 **.00** |
| 10/26/2012 | REGULAR PAYMENT | 543.54 | 10/2012 | 342.76 **60,620.10** | 200.78 | .00 **.00** | .00 | .00 | .00 **104.87** | .00 **.00** |
| 11/30/2012 | MISC. POSTING | .92 | 11/2012 | .92 **60,619.18** | .00 | .00 | .00 | .00 | | |

# Exhibit A

**Bank of America**
Home Loans

| Transaction Date | Description | Total Payment | PMT/MO | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 11/30/2012 | REGULAR PAYMENT | 549.08 | 11/2012 | 342.76 / **60,276.42** | 206.32 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 01/03/2013 | MISC. POSTING | 52 | 01/2013 | 52 / **60,275.90** | .00 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 01/03/2013 | REGULAR PAYMENT | 541.48 | 12/2012 | 342.76 / **59,933.14** | 198.72 | .00 / .00 | .00 | .00 | .00 / 40.06 | .00 / .00 |
| 02/22/2013 | MISC. POSTING | 46.32 | 02/2013 | 46.32 / **59,886.82** | .00 | .00 / .00 | .00 | .00 | .00 / 27.32 | .00 / .00 |
| 02/22/2013 | REGULAR PAYMENT | 203.68 | 01/2013 | .00 / **59,886.82** | 203.68 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 03/22/2013 | MISC. POSTING | 66.12 | 03/2013 | 66.12 / **59,820.70** | .00 | .00 / .00 | .00 | .00 | .00 / 54.64 | .00 / .00 |
| 03/25/2013 | REGULAR PAYMENT | 183.88 | 01/2013 | 183.34 / **59,637.36** | .54 | .00 / .00 | .00 | .00 | .00 / 54.64 | .00 / .00 |
| 04/25/2013 | REGULAR PAYMENT | 250.00 | 02/2013 | 159.42 / **59,477.94** | 90.58 | .00 / .00 | .00 | .00 | .00 / 80.97 | .00 / .00 |
| 05/24/2013 | REGULAR PAYMENT | 195.96 | 02/2013 | 82.86 / **59,395.08** | 113.10 | .00 / .00 | .00 | .00 | .00 / 80.97 | .00 / .00 |
| 05/28/2013 | MISC. POSTING | 54.04 | 05/2013 | 54.04 / **59,341.04** | .00 | .00 / .00 | .00 | .00 | .00 / 80.97 | .00 / .00 |
| 06/25/2013 | MISC. POSTING | 48.00 | 06/2013 | 48.00 / **59,293.04** | .00 | .00 / .00 | .00 | .00 | .00 / 80.97 | .00 / .00 |
| 06/25/2013 | REGULAR PAYMENT | 202.00 | 02/2013 | 202.00 / **59,091.04** | .00 | .00 / .00 | .00 | .00 | .00 / 340.83 | .00 / .00 |
| 07/25/2013 | MISC. POSTING | 55.07 | 07/2013 | 55.07 / **59,035.97** | .00 | .00 / .00 | .00 | .00 | .00 / 108.20 | .00 / .00 |
| 07/25/2013 | REGULAR PAYMENT | 194.93 | 03/2013 | 57.90 / **58,978.07** | 137.03 | .00 / .00 | .00 | .00 | .00 / 2.97 | .00 / .00 |
| 08/23/2013 | MISC. POSTING | 49.34 | 08/2013 | 49.34 / **58,928.73** | .00 | .00 / .00 | .00 | .00 | .00 / 135.08 | .00 / .00 |
| 08/23/2013 | REGULAR PAYMENT | 200.66 | 03/2013 | 153.81 / **58,774.92** | 46.85 | .00 / .00 | .00 | .00 | .00 / 135.08 | .00 / .00 |
| 09/25/2013 | REGULAR PAYMENT | 250.00 | 04/2013 | 188.95 / **58,585.97** | 61.05 | .00 / .00 | .00 | .00 | .00 / 135.08 | .00 / .00 |
| 10/25/2013 | REGULAR PAYMENT | 250.00 | 04/2013 | 107.79 / **58,478.18** | 142.21 | .00 / .00 | .00 | .00 | .00 / 135.08 | .00 / .00 |

Exhibit A

Bank of America
Home Loans

| Transaction Date | Description | Total Payment | PMT/MO | Principal / Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 11/25/2013 | REGULAR PAYMENT | 250.00 | 05/2013 | 234.97 / 58,243.21 | 15.03 | .00 / .00 | .00 | .00 | .00 / 135.08 | .00 / .00 |
| 12/26/2013 | REGULAR PAYMENT | 250.00 | 05/2013 | 69.07 / 58,174.14 | 180.93 | .00 / .00 | .00 | .00 | .00 / 135.08 | .00 / .00 |
| 01/21/2014 | REGULAR PAYMENT | 250.00 | 05/2013 | 250.00 / 57,924.14 | .00 | .00 / .00 | .00 | .00 | .00 / 135.08 | .00 / .00 |
| 02/25/2014 | REGULAR PAYMENT | 250.00 | 06/2013 | 48.00 / 57,876.14 | 202.00 | .00 / .00 | .00 | .00 | .00 / 135.08 | .00 / .00 |
| 03/25/2014 | REGULAR PAYMENT | 250.00 | 06/2013 | 250.00 / 57,626.14 | .00 | .00 / .00 | .00 | .00 | .00 / 135.08 | .00 / .00 |
| 04/25/2014 | REGULAR PAYMENT | 250.00 | 07/2013 | 68.45 / 57,557.69 | 181.55 | .00 / .00 | .00 | .00 | .00 / 135.08 | .00 / .00 |
| 05/27/2014 | REGULAR PAYMENT | 250.00 | 07/2013 | 236.62 / 57,321.07 | 13.38 | .00 / .00 | .00 | .00 | .00 / 135.08 | .00 / .00 |
| 06/25/2014 | REGULAR PAYMENT | 250.00 | 08/2013 | 106.14 / 57,214.93 | 143.86 | .00 / .00 | .00 | .00 | .00 / 135.08 | .00 / .00 |
| 07/25/2014 | REGULAR PAYMENT | 250.00 | 08/2013 | 193.20 / 57,021.73 | 56.80 | .00 / .00 | .00 | .00 | .00 / 135.08 | .00 / .00 |
| 08/25/2014 | REGULAR PAYMENT | 250.00 | 09/2013 | 149.56 / 56,872.17 | 100.44 | .00 / .00 | .00 | .00 | .00 / 135.08 | .00 / .00 |
| 09/25/2014 | REGULAR PAYMENT | 250.00 | 09/2013 | 150.21 / 56,721.96 | 99.79 | .00 / .00 | .00 | .00 | .00 / 135.08 | .00 / .00 |
| 10/24/2014 | REGULAR PAYMENT | 250.00 | 10/2013 | 192.55 / 56,529.41 | 57.45 | .00 / .00 | .00 | .00 | .00 / 135.08 | .00 / .00 |
| 11/25/2014 | REGULAR PAYMENT | 250.00 | 10/2013 | 114.34 / 56,415.07 | 135.66 | .00 / .00 | .00 | .00 | .00 / 135.08 | .00 / .00 |
| 12/26/2014 | REGULAR PAYMENT | 250.00 | 11/2013 | 228.42 / 56,186.65 | 21.58 | .00 / .00 | .00 | .00 | .00 / 135.08 | .00 / .00 |
| 01/23/2015 | MISC. POSTING | 250.00 | 01/2015 | 250.00 / 55,936.65 | .00 | .00 / .00 | .00 | .00 | .00 / 135.08 | .00 / .00 |
| 03/02/2015 | REGULAR PAYMENT | 250.00 | 11/2013 | 72.63 / 55,864.02 | 177.37 | .00 / .00 | .00 | .00 | .00 / 135.08 | .00 / .00 |
| 03/20/2015 | REGULAR PAYMENT | 250.00 | 11/2013 | 250.00 / 55,614.02 | .00 | .00 / .00 | .00 | .00 | .00 / 135.08 | .00 / .00 |
| 04/27/2015 | REGULAR PAYMENT | 250.00 | 12/2013 | 57.90 / 55,556.12 | 192.10 | .00 / .00 | .00 | .00 | .00 / 135.08 | .00 / .00 |

Exhibit A

**Bank of America — Home Loans**

Page 14

| Transaction Date | Description | Total Payment | PMT/MO | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 05/26/2015 | REGULAR PAYMENT | 250.00 | 12/2013 | 250.00 / 55,306.12 | .00 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |
| 06/25/2015 | REGULAR PAYMENT | 250.00 | 01/2014 | 54.99 / 55,251.13 | 195.01 | .00 / .00 | .00 | .00 | .00 / 135.08 | .00 / .00 |
| 07/24/2015 | REGULAR PAYMENT | 250.00 | 01/2014 | 247.19 / 55,003.94 | 2.81 | .00 / .00 | .00 | .00 | .00 / 135.08 | .00 / .00 |
| 09/04/2015 | REGULAR PAYMENT | 250.00 | 02/2014 | 95.57 / 54,908.37 | 154.43 | .00 / .00 | .00 | .00 | .00 / 135.08 | .00 / .00 |
| 09/25/2015 | REGULAR PAYMENT | 250.00 | 02/2014 | 207.13 / 54,701.24 | 42.87 | .00 / .00 | .00 | .00 | .00 / 135.08 | .00 / .00 |
| 10/30/2015 | REGULAR PAYMENT | 250.00 | 03/2014 | 135.63 / 54,565.61 | 114.37 | .00 / .00 | .00 | .00 | .00 / 135.08 | .00 / .00 |
| 12/04/2015 | REGULAR PAYMENT | 250.00 | 03/2014 | 186.65 / 54,378.96 | 63.35 | .00 / .00 | .00 | .00 | .00 / 135.08 | .00 / .00 |
| 12/29/2015 | REGULAR PAYMENT | 250.00 | 04/2014 | 156.11 / 54,222.85 | 93.89 | .00 / .00 | .00 | .00 | .00 / 135.08 | .00 / .00 |
| 01/26/2016 | REGULAR PAYMENT | 250.00 | 04/2014 | 147.46 / 54,075.39 | 102.54 | .00 / .00 | .00 | .00 | .00 / 135.08 | .00 / .00 |
| 02/29/2016 | REGULAR PAYMENT | 250.00 | 05/2014 | 195.30 / 53,880.09 | 54.70 | .00 / .00 | .00 | .00 | .00 / 135.08 | .00 / .00 |
| 04/01/2016 | REGULAR PAYMENT | 250.00 | 05/2014 | 115.29 / 53,764.80 | 134.71 | .00 / .00 | .00 | .00 | .00 / 135.08 | .00 / .00 |
| 05/27/2016 | REGULAR PAYMENT | 250.00 | 06/2014 | 227.47 / 53,537.33 | 22.53 | .00 / .00 | .00 | .00 | .00 / 135.08 | .00 / .00 |
| 07/25/2016 | BILLING ADJUSTMNT | 27.32 | 05/2014 | .00 / 53,537.33 | .00 | .00 / .00 | .00 | .00 | 27.32 | .00 / .00 |
| 07/25/2016 | BILLING ADJUSTMNT | 27.32 | 05/2014 | .00 / 53,537.33 | .00 | .00 / .00 | .00 | .00 | 27.32 | .00 / .00 |
| 07/25/2016 | BILLING ADJUSTMNT | 26.33 | 05/2014 | .00 / 53,537.33 | .00 | .00 / .00 | .00 | .00 | 26.33 / .00 | .00 / .00 |
| 07/25/2016 | BILLING ADJUSTMNT | 27.23 | 05/2014 | .00 / 53,537.33 | .00 | .00 / .00 | .00 | .00 | 27.23 / .00 | .00 / .00 |
| 07/25/2016 | BILLING ADJUSTMNT | 26.88 | 05/2014 | .00 / 53,537.33 | .00 | .00 / .00 | .00 | .00 | 26.88 / .00 | .00 / .00 |
| 07/25/2016 | PRINCIPAL ADJUST. | -53,537.33 | 05/2014 | 53,537.33 / 53,537.33 | .00 | .00 / .00 | .00 | .00 | .00 / .00 | .00 / .00 |

Exhibit A



**Bank of America**
Home Loans

## Fee Transaction Activity (06/2007 - 08/2019)

| Transaction Date | Fee Description | Charges | Payments |
|---|---|---|---|
| 07/22/2008 | Annual Maintenance Fee | 75.00 | .00 |
| 07/22/2008 | Annual Maintenance Fee | .00 | 75.00 |
| 07/24/2009 | Annual Maintenance Fee | 75.00 | .00 |
| 07/24/2009 | Annual Maintenance Fee | .00 | 75.00 |
| 07/23/2010 | Annual Maintenance Fee | 75.00 | .00 |
| 07/23/2010 | Annual Maintenance Fee | .00 | 75.00 |
| 07/22/2011 | Annual Maintenance Fee | 75.00 | .00 |
| 07/22/2011 | Annual Maintenance Fee | .00 | 75.00 |

# Exhibit A